## THOMPSON v. WALKER et al.

No. 9677—Opinion Filed June 22, 1920.

Rehearing Denied July 13, 1920.

(Syllabus by the Court.)

**Guardian and Ward—Guardian's Sale of Land—Distribution of Proceeds—Appeal From Order—Evidence.**

Record examined, and held, that in the circumstances disclosed in the opinion herein the trial court did not err in admitting in evidence the testimony objected to by counsel for the appellant.

Error from District Court, Seminole County; J. W. Bolen, Judge.

In the matter of the guardianship of Herbert Thompson, a minor, Thomas S. McGeisey, guardian. From action of district court affirming action of county court in distribu-

tion of proceeds of guardian's sale of land, appeal is prosecuted by Lafayette Walker, United States Probate Attorney, for the minor, making the guardian and C. S. Walker, Frank H. Reed, and Harry Rogers defendants in error. Affirmed.

Lafayette Walker, for plaintiff in error.

C. S. Walker, J. R. Cottingham, and S. W. Hayes, for defendants in error.

KANE, J. This is an appeal from the action of the district court affirming the action of the county court of Seminole county in the matter of the distribution of the proceeds derived from the sale of a certain tract of land purporting to belong to Herbert Thompson, a minor, by his guardian, Thomas S. McGeisey, the appeal being prosecuted by Lafayette Walker, the United States probate attorney.

The questions presented for consideration by the respective parties may be briefly summarized as follows:

(1) On behalf of the defendants in error it is contended that Lafayette Walker, United States probate attorney, had no right or authority to prosecute an appeal from the order of the county court to the district court, and thence to the Supreme Court, and therefore the appeal should be dismissed.

(2) And on the part of the plaintiff in error the probate attorney contends that the district court erred in overruling his objecttion to certain testimony introduced in evidence, which, it is claimed, attacks the verity of a certain judgment rendered by the district court of Creek county, Oklahoma, on July 3, 1916, quieting the title to the entire tract of land involved in the minor, Herbert Thompson.

As the first question now presented in the brief of counsel has heretofore been passed upon by this court in overruling a motion to dismiss upon the same ground filed by the defendants in error, we do not deem it necessary to rule upon it again in considering the case on its merits.

The facts necessary for the review of the question raised by the second assignment of error present a somewhat novel proposition of law. All the parties, including the probate attorney, concede that the proceedings before the county court for the sale of the minor's land were regular up to the point of disposing of the proceeds of the sale after they came into the hands of the guardian. Ordinarily the distribution of the proceeds of such a sale by the guardian is a very simple matter. The sale being allowed by the court for certain specific purposes authorized by statute, after it is confirmed by the court and the guardian's deed

is executed, the money derived therefrom must be disbursed by the guardian for the benefit of the minor pursuant to the order of sale in the manner prescribed by the governing statutes. The case at bar, as we have seen, followed the ordinary procedure until after the proceeds of the sale came into the hands of the guardian, whereupon the county court made the order of distribution complained of, which ordered:

"That the guardian, Thomas S. McGeisey, pay out of the funds received for his guardian's deed covering said property, fifty per cent to C. W. Walker, attorney for certain interest, ten per cent. to H. H. Rogers and ten per cent. to Frank H. Reed, all in accordance with a contract heretofore approved and order heretofore entered in this matter. It being understood that out of the proceeds of the said sale, said guardian shall have the sum of $20,000.00 after making said payments.

"Provided, however, that upon approval by the Honorable R..C. Allen, attorney for the Creek Tribe of Indians, said guardian is authorized to pay said parties an additional sum of $2,000.00 leaving the amount then in his hands at $18,000.00."

The testimony upon which this order was based and upon which it was affirmed by the district court, which it is claimed was erroneously admitted, conclusively established the following state of facts:

Prior to the institution of the proceedings for the guardian's sale, the title to the entire tract of land involved herein was in litigation in several actions in the district court of Creek county between three different sets of claimants, Herbert Thompson, the plaintiff in error herein, a Creek Indian minor, forming one side of the triangular controversy. In a settlement which was finally reached between the parties it was agreed that each set of claimants was entitled to a certain specific portion of the land involved. In a subsidiary contract entered into at the same time it was further agreed that instead of the judgment being entered in the district court in strict accordance with the interest of the respective sets of claimants, as disclosed by the settlement, which it is conceded was just, fair, and equitable to all the parties concerned, the judgment and decree should be entered quieting the title to the entire tract in Herbert Thompson, a minor, the appellant herein. The arrangement outlined in the secondary agreement was entered into for the convenience of all the parties, it being understood and agreed between them that immediately upon the entry of said judgment the guardian of Herbert Thompson would make application to the county court for the sale of the land and upon consumma-

tion of the sale the guardian's deed would be made to one Farmington, whereupon each set of claimants would receive his pro rata share of the consideration accruing therefrom in accordance with his interest as disclosed by the terms of the contract of settlement. The courts being complaisant, these agreements were carried out by the parties, with the approval of the county court, the national attorney for the Creek Indians, and the probate attorney, up to the point of distributing the proceeds of the guardian's sale in accordance with the subsidiary agreement. At this point the probate attorney objected to the introduction in evidence of the subsidiary agreement, upon the ground that it contradicted the terms of the judgment and decree of the district court of Creek county, which, as we have seen, upon its face quieted the title to the entire tract of land in Herbert Thompson, the minor. It is not entirely clear to us that either the county court, not being a court of equity, or the district court on appeal, possessed the power to enforce the subsidiary contract by ordering distribution in accordance with its terms. But assuming, as counsel for the appellant seems to, the existence of such power, we cannot agree with him that the testimony objected to was improperly admitted upon the ground stated. As we view the case, there was no purpose on the part of any of the parties to this controversy to question the verity of any of the judicial proceedings of either the district or county court up to the point of distributing the proceeds derived from the sale of the land. The title of the purchaser of the land at the guardian's sale, which is not assailed, rests upon the verity of the judgment of the district court of Creek county, and no one is attempting to question it. The probate attorney, it seems to us, is attempting to gain an undue advantage for his client by standing upon a too rigid enforcement of the letter of the law governing the sale by guardian of a minor's lands and disregarding the equitable considerations growing out of the contracts between the parties hereinbefore referred to.

The case at bar seems to us to be somewhat similar in principle to Talbott v. Barber, 11 Ind. App. 1, 38 N. E. 487. In that case Susan Barber, the wife of the defendant, had an inchoate interest in 160 acres of land owned by her husband. Thomas Barber was heavily indebted to Jesse Durham, and to secure the payment of the indebtedness mortgaged said land to him. Durham, being desirous of foreclosing on the land, so that he could realize on the debt, agreed with Susan Barber that if she would not appear at the trial of the foreclosure suit, and would let judgment be taken against

her by default, he would buy in the property, sell it, and account to her for one-third of the proceeds of the sale. The mortgage was foreclosed, and the land purchased by Durham in accordance with his promise. Subsequently he sold the land, but did not account to Susan Barber for her share of the proceeds, and to enforce the provisions of the agreement she brought suit against the administrator of the estate of Durham, who had died. One of the defenses urged by the administrator was that the judgment of foreclosure was res adjudicata, and parol evidence was inadmissible to vary or contradict it; that if plaintiff had any interest or right in the land at the time it was foreclosed, it was her duty to have appeared in answer to the summons and presented it to the court. To this defense, plaintiff's demurrer was sustained, and after trial had, judgment was rendered in favor of plaintiff. On appeal, with reference to the ruling of the trial court on the demurrer, the court in its opinion said:

"The plea of res adjudicata, to which a demurrer was sustained, was clearly insufficient. The gist of it is that the appellee was duly served with process in the foreclosure proceedings, but failed to appear, and that judgment was rendered against her by default. This, however, was one of the very things she contracted to do, according to the averments of the complaint, and it was partly this agreement not to appear which constituted the consideration of the trust. It is doubtless true, as a general rule, that when the wife of a mortgagor of real estate, in which she has an inchoate interest, is brought into court by summons in a foreclosure proceeding and fails to set up any claim or interest, she is concluded by the decree. But this rule can have no application to the facts in the present case. We apprehend that no court would debar a litigant, who, by special agreement, suffered default and judgment to be taken against him in consideration of some benefit inuring to him, from showing that fact."

It is true that the agreement in that case was to suffer default in the trial of the suit, while in the present case the parties agreed to quiet the title to the entire tract in Herbert Thompson under the agreement hereinbefore referred to, which it is conceded was equitable and fair to all the claimants. In the case at bar we understand that the guardian of Herbert Thompson is willing to carry out the agreement, and that his purpose to do so is approved by the county court, the national attorney for the Creek Indians, and by all the other interested parties except the probate attorney.

In these circumstances, paraphrasing the language used by the learned Justice who

prepared the opinion in Talbott v. Barber, supra, we apprehend that no court of equity would debar these appellees from introducing in evidence the equitable facts which show them to be entitled to the part of the proceeds derived from the sale of this land which was set apart to them by the order of distribution appealed from.

For the reasons stated, the judgment of the court below should be affirmed.

RAINEY, C. J., and PITCHFORD, JOHNSON, and McNEILL, JJ., concur.