Gerry J. Anthrop, Rose F. Anthrop *v.* Tippecanoe School Corporation and Fred M. Kuipers, Joan C. Kuipers.

[No. 3-1272A99. Filed May 9, 1973.]

*Thomas W. Munger,* of Lafayette, for appellants.

*Paul D. Ewan, Schultz, Ewan and Burns,* of Lafayette, for appellee, Tippecanoe School Corporation.

Lowdermilk, J.—On October 24, 1969, the Tippecanoe School Corporation, appellee (hereinafter referred to as "School") brought an action against appellants Gerry J. Anthrop and Rose F. Anthrop (hereinafter referred to as "Anthrop") and Fred M. Kuipers and Joan C. Kuipers, appellees herein (hereinafter referred to as "Kuipers") for the purpose of condemning land of Anthrop for School uses.

Appellees Kuipers were named party defendants, as they held a mortgage on the real estate being condemned.

Motions were filed to the complaint and were disposed of by the court adverse to Anthrop on March 17, 1970, at which time the court ordered the real estate condemned and appointed appraisers to assess Anthrop's damages. The appraisers filed their report on April 3, 1970, after which Anthrop timely filed exceptions thereto.

Thereafter, on June 25, 1970, Anthrop filed a motion to determine aggregate award of the appraisers in which they alleged ambiguity in the appraisers' report. The court found no ambiguity and that the appraisers' report assessed total damages to Anthrop of $60,000. This order was appealed by Anthrop to the Appellate Court, was transferred to the Supreme Court, and on December 8, 1970, our Supreme Court issued an order staying proceedings on Anthrop's motion until further ordered. This order remained in full force and effect until January 4, 1972, when our Supreme Court ordered it set aside and vacated.

The School paid into the office of the Tippecanoe Circuit Court Clerk on September 16, 1971, $60,000, the same being the damages assessed in the appraisers' report, and also demanded possession of the real estate. Anthrop was refusing to vacate the premises and the School filed, on October 13, 1971, a petition for writ of assistance which was, on November 19, 1971, ordered by the Tippecanoe Circuit Court to issue on December 1, 1971, for the sheriff to put the School in possession of the condemned real estate.

On November 30, 1971, Anthrop filed a petition to fix appeal bond, to stay proceedings and to stay the writ of assistance to allow Anthrop to post the necessary bond. Anthrop filed, on December 20, 1971, in our Supreme Court, an appeal of the order issued directing the writ of assistance.

On January 6, 1972, the trial court overruled Anthrop's motion to set aside the order for writ of assistance, denied Anthrop's demand for determination of benefits due under the

Relocation Assistance Act, and set the appeal bond in the amount of $60,000. Anthrop filed a motion to reduce the bond which the trial court overruled, after which Anthrop filed a petition with our Supreme Court to reduce the appeal bond.

Thereafter, on January 24, 1972, the sheriff of Tippecanoe County served a writ of assistance, took possession of the condemned real estate from Anthrop, and delivered it to the School.

The next day, January 25, 1972, the only daily newspaper in Lafayette published a story, including pictures, concerning the Anthrop family's forcible eviction from their home. The next day, January 26, 1972, the School filed a verified emergency affidavit for change of venue from the county, executed by Ronald L. Giese, president of the School Corporation, which was granted over Anthrop's objections and the venue of the case removed to the Benton Circuit Court.

The Benton Circuit Court assigned the cause for trial, to which assignment Anthrop objected for the reason the trial should be deferred pending the Supreme Court appeal. Anthrop's objection was overruled and the motion for continuance was denied.

On the same date the cause was re-assigned for trial on May 30, 1972, at which time Anthrop withdrew the written exceptions to the appraisers' report and the Judge of the Benton Circuit Court thereupon entered judgment for Anthrop in the amount of $60,000, the same being the amount of the appraisers' award, plus interest. Said court did, on June 1, 1972, enter a nunc pro tunc order as of May 30, 1972, which order declared the school to be the fee simple owner of the said real estate and included Kuipers as parties entitled to the damages awarded.

Anthrop timely filed a motion to correct errors which was later overruled and from which Anthrop now brings this appeal.

This court adopts the summarization of the motion to cor-

rect errors, as summarized by Anthrop's attorney, which is in the words and figures as follows, to-wit:

"1. Uncorrected error of law in issuing writ of assistance because plaintiff was not entitled thereto.

2. Denial of fair trial by order of court in issuing writ of assistance.

3. Uncorrected error of law in issuing and executing writ of assistance without having first given defendants all relocation assistance of 1971 benefits.

4. Denial of fair trial by abuse of discretion in fixing unreasonable appeal bond.

5. Uncorrected error of law—fixing unreasonable appeal bond.

6. Uncorrected error of law in granting change of venue from county.

7. Denial of fair trial resulting from abuse of discretion in granting change of venue from county.

8. Denial of fair trial from abuse of discretion in denying defendants' request for continuance.

9. Denial of fair trial by order of court granting protective orders.

10. Uncorrected error of law in entering two (2) orders for May 30, 1972, wherein the defendants (2) Kuipers were given an interest in the judgment for damages and interest.

11. Decision is contrary to law because it (A) improperly gave possession of the real estate to plaintiff and (B) gave the defendants Kuipers an interest in the damages awarded.

12. Statute under which proceedings are brought is unconstitutional."

Under Rule AP. 8.3 (A) (7) we shall consolidate and treat as one certain of the motions to correct errors. Under this consolidation we shall first treat specifications of error 1, 2, 3, and 11 (A).

Anthrop contends that the eviction order's correctness and validity depended upon whether or not at the times of the issuance and the service of the execution of the writ of assistance School, condemnor, was in fact entitled to the immediate possession of the real estate. And, further, the eviction depends upon whether the School acquired title by virtue of the appropriation order and, if not, whether the School (1) had

paid the amount of the appraisers' award within the time provided by law and (2) had complied with the Indiana Relocation Assistance Act of 1971. They further contend that both latter obligations must be performed as conditions precedent to issuance of a writ of assistance, and the failure of one or both of the conditions precedent would make the order of the Tippecanoe Circuit Court directing Anthrop's eviction and its forcible execution by the sheriff reversible error and the same would apply to the order of the Benton Circuit Court in affirming the acts of the Tippecanoe Circuit Court and in determining the condemnor (School) to be the legal owner of Anthrop's real estate.

Anthrop cites an authority for his contentions the case of *State* v. *Flamme* (1939), 217 Ind. 149, 26 N.E.2d 917, and which case in speaking of condemning real estate holds that the taking is not regarded as complete until the compensation fixed has been paid or secured, or the condemnor has taken actual possession of the land, and until that time the proceedings may be abandoned or discontinued. This case further holds:

"The appellant contends that the provision of the statute with reference to the payment of the judgment within one year after its rendition is positive and self-executing, and that if payment is not so made the condemnor finds itself in the same position 'as though no such appropriation or condemnation had been begun or made.' We are of the opinion that such is the correct interpretation of the statute."

We agree with the law in the cited case but must hold that the case is not in point. IC 32-11-1-11, the same being Burns Ind. Ann. Stat. § 3-1710, provides, in part, as follows, to-wit:

"Damages-Failure to pay-Nonuser-Effect.—Should the person, corporation or other body seeking such appropriation fail to pay the damages assessed within one (1) year after the report of the appraisers is filed, *in case no exceptions are filed thereto, or where exceptions are filed to the report of the appraisers, shall fail to pay the damages assessed if judgment is rendered against such exceptions, or to pay the judgment and costs in case such exceptions are sustained,*

*within one (1) year after the rendition of any such judgment, provided such judgment is not appealed from;* or in case of such appeal shall fail to pay the damages assessed or the judgment rendered in the Circuit or Superior Court, within one (1) year after final judgment of affirmance or reversal is rendered in the Supreme or Appellate Court; . . . shall forfeit all right in and to such real estate or other property as fully and completely as though no such appropriation or condemnation had been begun or made. . . ." (Our emphasis.)

Anthrop contends that the phrase "in case no exceptions are filed thereto" refers solely to exceptions filed by the condemnor. With this we cannot agree, as the statute expressly refers to cases in which *no exceptions are filed thereto,* which, in our opinion, alludes equally to both the condemnee and the condemnor. The condemnee having timely filed exceptions to the appraisers' report has waived his right to the relief which he now contends he should have.

Anthrop's contention that the court erred in issuing the execution of the writ of assistance without having first given them all relocation assistance benefits is based on the premise that Anthrop came under said Act, the same being IC 8-13-18.5-1, and also Burns Ind. Ann. Stat. § 3-1771, *et seq.*

This court has made a careful study of the Indiana Relocation Assistance Act of 1971 and has been unable to determine, and Anthrop has failed to show us, where compliance with said Act is a condition precedent to the condemnor's right of possession.

Payment by the School, on September 16, 1971, of the sum of $60,000, the same being the amount of the appraisers' report, was legal and the demand for possession of the land at that time was proper and should have been acceded to. Therefore, the writ of assistance issued on December 1, 1971, after argument of counsel to put the School in possession of the condemned real estate was proper and legal.

We have consolidated specifications of error 4 and 5 which charge abuse of discretion in fixing unreasonable appeal bond.

Anthrop contends the trial court's requiring him to file an appeal bond violated Rule TR. 62(D)(1). However, in his brief he admits that the fixing of the amount of the appeal bond was in the discretion of the trial court. He urgently insists that the court abused its discretion and in so doing its act became subject to review, as it was only necessary that the amount of the bond be "adequate."

School alludes to Rule TR. 62(D)(2) and then sets out that before fixing the amount of the appeal bond the trial court heard testimony upon Anthrop's petition. The transcript of this testimony heard by the court has not been included in the record and made available to this court. We have determined from the transcript and a reading of the petition to fix appeal bond and to stay writ and from the trial judge's order under date of December 1, 1971, part of which reads as follows, to-wit:

> "And all pending motions are now submitted to the court. Argument of counsel is now heard, *together with testimony regarding appeal bond,* and these matters are now taken under advisement." (Our emphasis.) ;

that the transcript is moot as to and fails to set out any testimony offered on the petition to fix the amount of the appeal bond and stay writ. Therefore, appellant Anthrop has failed to bring into the record the facts upon which the trial court based its findings and determination. It is so elementary that it needs no citation of authority that this court cannot pass on matters not presented to it by the record. This court, in the absence of the evidence introduced to the trial court, has nothing on which to base its judgment as to whether or not the trial court abused its discretion, and specifications 4 and 5 do not present any claimed error to this court.

Specifications 6 and 7, which charge error of law in granting change of venue from the county and also abuse of discretion resulting from said change, are consolidated.

Anthrop contends that the motion for change was not timely

filed and that prior thereto School's counsel had given a statement to the press that the lawsuit would be over as soon as Anthrop withdrew the $60,000 from the Clerk's office and therefore the School had no right to object to the article in the same newspaper which gave very much of the same facts.

The record shows on its face that Anthrop filed written objections to School's motion for change of venue and the affidavit of Gerry J. Anthrop in response to said motion.

Anthrop contends that under Rule TR. 76 (8), which governs change of venue, that School was precluded from filing the affidavit and motion for change except on showing of good cause; that good cause was not shown and the court abused its discretion in granting the change.

In *Estate of Alexander* v. *Alexander* (1966), 138 Ind. App. 443, 212 N.E.2d 911, this court said, in speaking of discretion of the trial courts in a quote from the case of *Ferrara et ux.* v. *Genduso et al.* (1940), 216 Ind. 346, 348, 24 N.E.2d 692:

> " '. . . "The presumption in favor of correct action on the part of a trial court is one of the strongest presumptions applicable to the consideration of a cause on appeal." . . .' "

Both parties cite *State ex rel. Botkin* v. *Delaware Circuit Court* (1959), 240 Ind. 261, 162 N.E.2d 611. In *Botkin,* the question of abuse of discretion was presented in a petition for writ of mandate against the trial judge to permit the filing of relator's affidavit for change of venue from the county and a further mandate to grant said change of venue from the county.

Our Supreme Court, in that case, in discussing the ten day rule for change of venue under old Rule 1-12B, said, in answer to the contention that where one attempts to make an affirmative showing of recent prejudice to escape the consequences of the ten day rule that a mandatory duty enjoined by law can be deemed to have evolved upon the respondent court, to act in the manner requested by the relator.

". . . On the contrary, the specific language of Rule 1-12B requires that the determination of the issue presented by this affidavit for change of venue must be addressed to the lower court's judicial discretion. . . ."

It is our opinion that School's affidavit under Rule TR. 76 (8) was adequate in form and it is our further opinion that inasmuch as the affidavits and objections were before the trial court and duly considered by him there was no abuse of discretion and the change of venue was properly granted.

Anthrop omitted briefing specifications 8 and 9 of his motion to correct errors and the same will not be considered by this court under Rule AP. 8.3 (A) (7).

Specifications 10 and 11B complain of the court's entering two orders for May 30, 1972, wherein appellees Kuipers were given an interest in the judgment for damages and interest.

The complaint alleged that Kuipers held a mortgage on the real estate in question. No place can we find in the record that the mortgage was paid off and the lien thereof discharged. Anthrop withdrew his exceptions to the appraisers' report in the Benton Circuit Court, at which time the order of May 30, 1972, including the Kuipers to protect their interest in said property by virtue of a mortgage lien which was still on said real estate according to the record, was properly entered by the trial court. Rule TR. 52.

The protecting of Kuipers' interest by the court would not necessarily mean that they received a part of the damages awarded, as that was purely a matter between Anthrop and Kuipers.

Anthrop's contention that he did not receive adequate damages could not have been considered by the trial court as a grounds of error, as Anthrop withdrew his exceptions to the appraisers' report voluntarily and the judgment was entered the same day. Had he felt he was oppressed or underpaid he should have contested the action on his exceptions which he had theretofore filed and

not doing so he waived any question as to the amount of the damages.

Anthrop's final issue, properly raised in specification 12 of the motion to correct errors, is whether the condemnation proceedings in this case are unconstitutional because it deprives the landowner of his property without just compensation. Anthrop points to the guarantees of the United States and Indiana Constitutions as authority for this proposition.

Anthrop is concerned with the fact that he must pay attorney fees and income taxes from the judgment awarding damages. He argues that these factors substantially reduce the amount of the judgment he will receive and, thus, deny him just compensation for the appropriation of his land.

School cites the case of *Sisters of Providence* v. *Lower Vein Coal Company* (1926), 198 Ind. 645, 154 N.E.2d 659, in which our Supreme Court held that the eminent domain statute is constitutional. Anthrop urges this court to review this decision and its rationale and hold the proceedings unconstitutional. We are not persuaded by this argument and it is our opinion that the *Sisters of Providence, supra,* case is still the ruling law in this State, and the condemnation laws of Indiana are constitutional.

Affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 295 N.E.2d 637.